THE BROTHERS.[1]

DREISKE *v.* THE BROTHERS and others.

(*District Court, N. D. Illinois.* November 22, 1886.)

1. COLLISION—TUG AND SCHOONER—HARBOR NAVIGATION—OVERTAKING VESSEL.
   The tug M., while incumbered by a tow, was overtaken by the tug B. The latter vessel was unincumbered, and was steaming at a higher rate of speed than the M. After passing the latter vessel, the master of the B. endeavored to cross her bows, but in doing so the two vessels came in contact, in consequence of which the B. was forced athwart the river, and into collision with the schooner C. *Held,* that the collision was caused by the faulty maneuver of the B., and that there was no fault on the part of the other vessels.
2. SAME—ATTACHMENT OF INNOCENT VESSEL—COSTS.
   The M. having been brought into the case at the instance of the owners of the B., and having been adjudged to be without fault, must be awarded costs as against the B.

In Admiralty.

*W. H Condon*, for libelant.

*W. L. Mitchell*, for the Brothers.

[1]Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

*Schuyler & Kremer*, for the McLane.

BLODGETT, J. This case is now before me upon exceptions to the commissioner's report. The original libel was filed by libelant, Dreiskie, as owner of the schooner Ralph Campbell, against the tug Brothers, for damages to the Campbell resulting from a collision between the tug and the schooner near the south entrance to the east draw of the Madison-street bridge, on the Chicago river. On the application of the owners of the tug, an order was made bringing in the tug Mary McLane as a party respondent in the case, upon the allegation that the collision complained of was caused by the negligence and bad management of the McLane, to such extent as to make her liable for the whole or part of the damage done to the Campbell. The commissioner found and reported that the collision and injury to the Campbell resulted from the joint negligence of those in charge of the tug Brothers and of the tug McLane, and that the damages to the Campbell should be divided, and one-half paid by each tug. Exceptions have been filed to the report by the claimant of the Brothers, on the ground that all the damages should have been awarded against the McLane; and by the claimant of the McLane, on the ground that the proof shows the McLane was not at fault for the collision, and hence that the commissioner erred in awarding any damages against her.

From an examination of the proof submitted with the commissioner's report, it appears that, at the time of the collision in question, the tug Shields, with the schooner Ralph Campbell in tow, was going down the Chicago river, and passed through the west draw of the Madison-street bridge, at about the same time the tug Mary McLane, with the schooner Persia in tow, proceeding up the river, passed through the west draw of the Randolph-street bridge two blocks north of the Madison-street bridge. Just before the Shields reached the draw of the Madison-street bridge, she gave the usual signal indicating her intention to pass through the west draw of the Randolph-street bridge, and, as the east draw of the Madison-street bridge was clear, the McLane assented to this signal, and starboarded her wheel, so as to carry herself and tow to port diagonally across the river, into the east draw of the Madison-street bridge. The tug Brothers was also proceeding up the south branch of the river, without any tow or other incumbrance, and passed through the east draw of the Randolph-street bridge a short distance behind the McLane and her tow. She was, however, running at a greater rate of speed than the McLane, and, just before the latter had reached the north end of the middle pier, or turn-table pier, of the Madison-street bridge, the Brothers had nearly passed the McLane, and so changed her course as to throw her across the McLane's bows, by reason of which the McLane struck the fan-tail or after-part of the Brothers, back of her wheel-house, upon the starboard side; thus causing her to swing directly, or nearly so, athwart the river, so that the Brothers came in collision with the Campbell, which was just passing out of the west draw of the Madison-street bridge, causing the injury complained of.

The commissioner, from the testimony before him, came to the conclusion that the McLane was at fault in striking the stern or after-part of the Brothers, and laid much stress upon the application of sailing rule No. 22, which requires an overtaking vessel to keep out of the way of the other vessel; and also found that, at or about the time the McLane struck the Brothers, she starboarded her wheel, whereby her bow was swung to port, so as to produce more effect upon the Brothers'than would have been produced if she had ported her wheel, and swung the bow of the McLane to starboard.

I think, however, the testimony does not sustain the decision of the commissioner that the wheel of the McLane was starboarded at or about the time she struck the Brothers. The testimony does fully show that the McLane starboarded her wheel soon after she passed through the Randolph-street draw, for the purpose of passing over to the port side of the river, and I think that is the only time that the proof shows the wheel of the McLane was put to starboard; but, even if the commissioner is correct in his conclusion as to the maneuver, or attempted maneuver, on the part of the McLane at the time she struck the Brothers, I still think that he has improperly invoked or.applied the principle of rule 22, because I do not see how the McLane, under the circumstances, can be called an overtaking vessel. The Brothers was, to all intents and purposes, the overtaking vessel. She was running free, and unincumbered, and very rapidly, and undoubtedly her pilot had miscalculated the extent to which he had passed the McLane when he ported his wheel, and threw his vessel to starboard, across the bows of the McLane, whereby the mischief was occasioned, as he probably supposed that he had passed far enough ahead to enable him to swing in and clear her. Being the overtaking vessel, the Brothers was bound, under rule 22, to keep clear of the McLane, and had no right to swing in across the bows, or place himself in a position where he would come across the bows of the McLane in order to pass her. The course of the McLane with her tow was undoubtedly at this time slightly diagonally across the stream, and it was the imperative duty of the pilot of the Brothers, as this all occurred in broad day-light, and when there was nothing to interfere with his seeing the course of the McLane, and estimating her rate of speed, and noting the fact that she had a tow behind her, which she was bound to carry clear of the protection of the bridge pier, not to put himself in a position to cross the path of the McLane, or bring his vessel in collision with her. This he evidently did not do, but, as I have already said, miscalculated the extent which he had passed the McLane when he put his helm to port, and swung his tug so that her stern collided with the bows of the McLane.

Suppose that the Brothers, instead of having collided with the schooner, had herself received serious damage from the collision with the McLane, and had brought suit against the latter for such damage, could there be any doubt, under the facts, that all the fault would have been found to lie with the Brothers, and that she would have been compelled to bear the damage by reason of her own negligence? If such would be the ver-

dict, as between the two tugs, under the circumstances supposed, it seems to me it completely answers the claim that the McLane should bear any portion of the damage sustained by the Campbell.

The exceptions to the commissioner's report are sustained, and a decree may be entered finding that the collision between the Brothers and the Campbell was brought about solely by the negligence of the former, and that the damages shall be assessed against the Brothers alone. The McLane, having been brought into the case at the instance of the owners of the Brothers, must be awarded costs against the Brothers.